**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**PNC BANK, N.A.,**

      **Plaintiff,**

v.                                       Case No:   6:15-cv-161-Orl-31KRS

**ASSOCIATED CREDIT AND**
**COLLECTION BUREAU, INC. and**
**THOMAS DREHER,**

      **Defendants.**

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT:**

    This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**    PNC BANK N.A.'S MOTION FOR FINAL DEFAULT JUDGMENT ON DEFENDANTS (Doc. No. 16)
>
> **FILED:**      April 10, 2015

**I.   PROCEDURAL HISTORY.**

    Plaintiff PNC Bank, N.A. ("PNC") filed a verified complaint against Defendants Associated Credit and Collection Bureau, Inc. ("Associated Credit") and Thomas Dreher ("Dreher"), asserting counts for (1) default on a note against Associated Credit; (2) default on a guaranty by Dreher; and (3) foreclosure of the mortgage lien on mortgaged property against Associated Credit and Dreher. Doc. No. 1.   PNC served its verified complaint on Associated Credit through Dreher, its registered agent, on February 9, 2015.   Doc. No. 13.   That same day, PNC also served the verified complaint on Dreher.   Doc. No. 12.   Neither Associated Credit nor Dreher, however, appeared in this action.

Upon PNC's motions, the Clerk of Court entered defaults against both Defendants on March 26, 2015. Doc. Nos. 10–11, 14–15.

On April 10, 2015, PNC moved for an entry of default judgment against Defendants. Doc. No. 16. I issued a supplemental briefing order on June 19, 2015, requiring that PNC submit additional evidence that set forth the factual bases and detailed calculations for each item of damages requested. Doc. No. 17. PNC filed a supplemental memorandum, accompanied by an affidavit, on July 6, 2015. Doc. No. 19. The motion for default judgment has been referred to me for issuance of this Report and Recommendation.[1] It is now ripe for review.

## II.    STANDARD OF REVIEW.

A court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for such entry. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not *well-pleaded* or to admit conclusions of law.").[2] Therefore, in considering a motion for default judgment, a court must "examine the sufficiency of plaintiff's allegations to determine whether [the] plaintiff is entitled to" a default judgment. *Fid. & Deposit Co. of Md. v. Williams*, 699 F. Supp. 897, 899 (N.D. Ga. 1988).

The Supreme Court has explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-has-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

---

[1] The motion was referred to me for consideration on May 7, 2015.

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all binding decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  This requirement applies with equal force in the analysis of a motion for default judgment.  *De Lotta v. Dezenzo's Italian Rest., Inc.*, No. 6:08-cv-2033-Orl-22KRS, 2009 U.S. Dist. LEXIS 110538, at *2–4 (M.D. Fla. Sept. 3, 2009), *adopted by* 2009 U.S. Dist. LEXIS 110257 (M.D. Fla. Nov. 24, 2009).

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default.  Rather the Court determines the amount and character of the damages to be awarded."  *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999).  If a default judgment is warranted, the court may hold a hearing for purposes of assessing damages.  Fed. R. Civ. P. 55(d)(2); *see also SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).  However, a hearing is not necessary if a party submits sufficient evidence to support the request for damages.  *Smyth*, 420 F.3d at 1232 n.13.

### III. ALLEGATIONS OF THE COMPLAINT.

On or about August 21, 2006, Associated Credit executed and delivered to Indian River National Bank ("Indian River") a real estate note in the original principal amount of $1,000,000.00.  Doc. No. 1 ¶ 11(a); Doc. No. 1-2, at 2-3 (the "August 21, 2006 note" bearing PNC loan # 605493044).  Under the August 21, 2006 note, Associated Credit agreed to pay the outstanding principal balance at a rate of 7.25% interest per year until August 21, 2016.  Doc. No. 1-2, at 2.  Dreher executed and delivered to Indian River a guaranty on the August 21, 2006 note.  Doc. No. 1 ¶ 11(c); Doc. No. 1-2, at 15-16.

The August 21, 2006 note provided that Associated Credit would be in default on the loan and any agreement securing the loan if, *inter alia*, it failed to make a payment in full when due or if "[a]nything else happens that causes [Indian River] to believe that [it] will have difficulty collecting

the amount [Associated Credit] owe[s] [Indian River]." Doc. No. 1-2, at 3. In the event of a default, Indian River or its successor-in-interest could make the unpaid principal, earned interest, and all other agreed charges immediately due. *Id.*[3] The August 21, 2006 note further provided that Associated Credit must pay a late charge on the portion of any payment made more than fifteen days after its due date, equal to five percent of the unpaid amount. *Id.* at 2. In connection with any collection on the August 21, 2006 note, Associated Credit also agreed to pay reasonable costs and attorneys' fees of ten percent of the principal sum due on the note "or such larger amount as may be reasonable and just." *Id.* at 3.

Associated Credit owns property consisting of land and improvements at 975 Eyster Boulevard, Rockledge, Florida 32955 (the "Eyster Property"). Doc. No. 1 ¶ 13. At that same time it executed the August 21, 2006 note, Associated Credit executed and delivered to Indian River a real estate mortgage on the Eyster Property securing the loan. *Id.* ¶ 11(b); Doc. No. 1-2, at 5-13. The mortgage was recorded on August 23, 2006 in Official Records Book 5688, beginning at page 2921, in the Official Records of Brevard County, Florida. Doc. No. 1 ¶ 11(b).

On or about September 11, 2007, Associated Credit executed and delivered to Indian River a promissory note in the original principal amount of $200,000.00. *Id.* ¶ 11(d); Doc. No. 1-2, at 18-19 (the "September 11, 2007 note"). Under the September 11, 2007 note, Associated Credit promised to pay one principal payment of $200,000.00, plus interest at a rate of 7.750% per annum, by March 7, 2008. Doc. No. 1-2, at 18. Dreher executed and delivered to Indian River a commercial guaranty on the September 11, 2007 note. Doc. No. 1 ¶ 11(e); Doc. No. 1-2, at 21-22. The September 11, 2007 note was cross-defaulted and cross-collateralized with the August 21, 2006

---

[3] A different default provision applied to a loan secured by real estate or a residence that is personal property. Doc. No. 1-2, at 3. Because Dreher executed a commercial guaranty, discussed below, it appears that the real property securing the loan is not personal property.

note.  Doc. No. 1-2, at 19.  The September 11, 2007 note also provided that "[a] default on either note constitutes a default on both."  *Id.*

On April 29, 2008, after it became successor-in-interest to Indian River, *id.* ¶ 1, RBC Bank (USA) ("RBC") entered into a change-in-terms agreement with Associated Credit, *id.* ¶ 11(f); *see also* Doc. No. 1-2, at 25–27.  The agreement extended the September 11, 2007 note's maturity date to May 7, 2009, and decreased the interest rate to 6.00% per annum.  Doc. No. 1-2, at 25.

RBC and Associated Credit then entered into another change-in-terms agreement on August 25, 2009, in which the maturity date of the September 11, 2007 note was further extended to August 25, 2010.  Doc. No. 1 ¶ 11(g); Doc. No. 1-2, at 29.  The principal balance at the time was $166,898.76.  Doc. No. 1-2, at 29.  Associated Credit and RBC also executed a balloon mortgage on the Eyster Property, Doc. No. 1 ¶ 11(h); Doc. No. 1-2, at 33–43, which mortgage was added as collateral to the September 11, 2007 note, Doc. No. 1-2, at 29.  The mortgage was recorded on September 3, 2009, in Official Records Book 6020, beginning at page 2708, in the Official Records of Brevard County Florida.  Doc. No. 1 ¶ 11(h).  The mortgage was added as collateral to the August 25, 2009 change-in-terms agreement.  Doc. No. 1-2, at 30.

RBC Bank entered into another change-in-terms agreement with Associated Credit on October 6, 2010, in which the maturity date of the September 11, 2007 note was extended to August 25, 2011.  Doc. No. 1 ¶ 11(i); Doc. No. 1-2, at 45–47.  The principal balance at the time was $138,804.83.  Doc. No. 1-2, at 45.

On October 6, 2011, RBC and Associated Credit entered into yet another change-in-terms agreement, in which the maturity date of the September 11, 2007 note was extended to August 25, 2013.  Doc. No. 1 ¶ 11(j); Doc. No. 1-2, at 49–51.  The unpaid principal balance at the time was $108,379.51.  Doc. No. 1-2, at 49.

Thereafter, PNC became a successor-in-interest to RBC. Doc. No. 1 ¶ 1. As successor-in-interest to RBC, PNC owns and holds the relevant loan documents executed by Associated Credit and Dreher. Doc. No. 1 ¶ 19. Associated Credit and Dreher defaulted on the August 21, 2006 note when they failed to make payments as due under that note and guaranty on June 21, 2014, and July 21, 2014. Doc. No. 1 ¶ 14; Doc. No. 1-2, at 53. As a result, PNC deemed itself insecure, and accelerated and demanded payment of the full amount of the August 21, 2006 note. Doc. No. 1 ¶ 14. PNC alleges that the entire amount remains due and owing. Doc. No. 1 ¶ 22.[4]

Any right, title, or interest that Associated Credit has in the land and improvements of the Eyster Property is junior and inferior to that of PNC. *Id.* ¶ 31.

## IV. ANALYSIS.

First, I will discuss whether, in light of Defendants' default, PNC is entitled to the entry of default judgment with respect to each claim set forth in the complaint. Second, I will discuss the adequacy of PNC's evidentiary submissions concerning damages.

### A. *Defendants' Liability.*

#### a. Count One — Associated Credit's Breach of the August 21, 2006 Note.

Under Florida law, an action for breach of a promissory note is the same as an action for breach of contract. *See Wane v. Loan Corp.*, 926 F. Supp. 2d 1312, 1324 (M.D. Fla. 2013). The elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages. *Abbot Labs., Inc. v. Gen. Elec. Capital*, 765 So. 2d 737, 740 (Fla. Ct. App. 5th Dist. 2000). To succeed in an action for breach of a promissory note, the plaintiff must also establish that it owns and possesses the original note. *PNC Bank, N.A. v. Kimbrough & Assocs., LLC*,

---

[4] PNC also alleges that, as of January 29, 2015, the amount of principal due was $756,316.61 and that the amount of interest due was $29,284.06 with additional costs and late fees. Doc. No. 1 ¶ 15.

No. 6:13-cv-1558-Orl-28KRS, 2014 U.S. Dist. LEXIS 180931, at *15 (M.D. Fla. Dec. 10, 2014), *adopted by* 2015 U.S. Dist. LEXIS 7972 (M.D. Fla. Jan. 23, 2015).

By its failure to respond to the complaint, Associated Credit admits that it executed and delivered the August 21, 2006 note, thereby creating a valid contract. Doc. No. 1 ¶ 11(a); Doc. No. 1-2, at 2–3. Defendants admit that PNC Bank, as successor-in-interest to RBC Bank, which was itself successor-in-interest to Indian River, is the owner and holder of the August 21, 2006 note. Doc. No. 1 ¶ 19. Defendants also admit that Associated Credit defaulted under the terms of the August 21, 2006 note when it failed to make payments as due on June 21, 2014, and July 21, 2014. *Id.* ¶ 14; Doc. No. 1-2, at 53. Pursuant to the terms of the August 21, 2006 note, PNC then accelerated and demanded that the loan be paid in full by August 8, 2014. Doc. No. 1 ¶ 14; Doc. No. 1-2, at 53. All or a portion of the August 21, 2006 note, however, remains due and owing. Doc. No. 1 ¶¶ 15, 22. Consequently, Associated Credit's breach of the Note has resulted in monetary damages to PNC Bank. *Id.* ¶ 15. These admissions establish that Associated Credit breached the August 21, 2006 promissory note and is liable to PNC Bank.

b.   <u>Count Two — Dreher's Breach of His Guaranty.</u>

"A guaranty is a collateral promise to answer for the debt or obligation of another." *FDIC v. Univ. Anclote, Inc.*, 764 F.2d 804, 806 (11th Cir. 1985). "In Florida, the elements of an action for breach of a guaranty arise from a debtor's default and the guarantor's subsequent failure to pay." *Bank First v. Guillem*, No. 6:09-cv-152-Orl-31KRS, 2009 U.S. Dist. LEXIS 129051, at *10 (M.D. Fla. June 10, 2009), *adopted by* 2009 U.S. Dist. LEXIS 55927 (M.D. Fla. June 30, 2009). The rules applicable to contracts generally also apply to guaranty contracts. *Kahama VI, LLC v. HJH LLC*, No. 8:11-cv-2029-T-30TBM, 2013 U.S. Dist. LEXIS 58736, at *7 (M.D. Fla. Apr. 24, 2013). Accordingly, the three elements for a breach-of-guaranty claim are (1) a valid contract; (2) a material

breach; and (3) damages. *Id.*

Dreher executed and delivered a guaranty on the August 21, 2006 note to Indian River, thereby entering into a valid contract. Doc. No. 1 ¶ 11(c), (e). Dreher guaranteed payment and performance of the debt, liability or obligation of Associated Credit to Indian River. Doc. No. 1-2, at 15-21. Dreher defaulted under the terms of the guaranty by failing to make payments when due. Doc. No. 1 ¶¶ 8, 12, 24. All of some portion of the August 21, 2006 note remains due and owing. Doc. No. 1 ¶¶ 15, 22. As a result of Dreher's breach of the guaranty, PNC has suffered monetary damages. *Id.* ¶¶ 14–15, 26. These admissions establish that Dreher breached the guaranty and, therefore, is liable to PNC Bank.

        c.     <u>Count Three — Foreclosure on PNC Bank's Mortgage Lien and Other Claims of Lien.</u>

In Florida, "the institution of a suit for foreclosure is the exercise of the option of the mortgagee to declare the whole of the principal sum and interest secured by the mortgage due and payable." *Kreiss Potassium Phosphate Co. v. Knight*, 124 So. 751, 755 (Fla. 1929). To be entitled to judicial foreclosure, a plaintiff must show that it is the holder of the note and mortgage. *Lizio v. McCullom*, 36 So. 3d 927, 929 (Fla 4th Dist. Ct. App. 2010). The plaintiff must also show that the debtor defaulted on the terms of the note. *Citibank, N.A. v. Dalessio*, 756 F. Supp. 2d 1361, 1365 (M.D. Fla. 2010).

By their default, Defendants admit that, to secure the debt incurred under the August 21, 2006 note, Associated Credit delivered to Indian River a mortgage on the land and improvements of the Eyster Property. Doc. No. 1 ¶ 11(c), (h); Doc. No. 1-2, at 5–6. As noted above, Associated Credit defaulted on the terms of the August 21, 2006 note when it failed to make payment when due.

PNC Bank is the holder of the August 21, 2006 note and mortgage on the Eyster Property. Doc. No. 1 ¶ 19.  PNC's interest in the mortgaged property is superior to any interest owned by Associated Credit.  *Id.* ¶ 31.  Accordingly, PNC Bank is entitled to enforce the August 21, 2006 note and foreclose the mortgage.

   B.   *PNC's Damages.*

On June 19, 2015, I issued a supplemental briefing order, directing PNC to file a memorandum of law, supported by an affidavit that set forth the bases for the damages requested. Doc. No. 17, at 2.  Moreover, I ordered that "[t]he affidavit must provide a detailed calculation for each item of damages requested by the motion for default judgment."  *Id.*

Along with its supplemental memorandum, PNC Bank submitted a second affidavit from its Asset Manager, Michael Welsh ("Welsh").  Doc. No. 19-1.  Welsh states that, as of April 3, 2015, Associated Credit and Dreher owe PNC Bank an aggregate amount of $803,742.61.[5]  *Id.* ¶ 9.  He itemizes that sum as follows:

| Principal | $756,316.61 |
| --- | --- |
| Interest (as of 4/3/15, at $152.31 per day) | $39,031.90 |
| Appraisals | $5,850.00 |
| Late Charges | $2,544.10 |
| **TOTAL** | **$803,742.61** |

*Id.*  Upon review of PNC's supplemental submissions, I conclude that PNC has still failed to adequately address the issues raised in my supplemental briefing order.

First, PNC has failed to provide an adequate explanation as to how the Court should calculate interest.  In his affidavit, Michael Welsh asserts that interest should be calculated at a rate of

---

[5] In his original affidavit, Welsh averred that, as of April 3, 2015, the amount owed to PNC was "in the aggregate amount of $841,551.19."  Doc. No. 16-1 ¶ 10.  He does not, however, explicitly discuss the reasons for the discrepancy in his supplemental affidavit.

$152.31 per day, given the principal that remains due and the 7.25% annual interest rate set forth in the August 21, 2006 note.[6]   Doc. No. 19-1 ¶ 13.   Even assuming that rate is correct, however, PNC has provided no explanation — i.e., the detailed calculation required by the supplemental briefing order — to show how that rate results in the $39,031.90 claimed in Welsh's affidavit as the interest due as of April 3, 2015.[7]   *Id.* ¶ 9.   Indeed, the daily rate identified by Welsh does not divide evenly into the $39.031.90 figure claimed.   Moreover, the unpaid interest total as of April 3, 2015, is not immediately apparent from the loan histories attached to Welsh's affidavit.   In short, PNC has not adequately explained why it should be awarded the interest requested.

Second, PNC has failed to provide an adequate explanation as to how the Court should calculate the requested late charges.   Welsh states only that, "[i]n calculating the late charges owed on the Obligation[8], the Bank charged 5% of the unpaid amount in accordance with the Loan Documents."   *Id.* ¶ 15.   This statement provides little indication as to how Welsh actually calculated the $2,544.10 figure requested for late fees.[9]   *Id.* ¶ 9.   For example, Welsh has not specifically explained how he determined the "unpaid amount," which appears to be a figure other than the unpaid principal.[10]

---

[6] PNC does not allege that Defendants are in default under the September 11, 2007 note.   If PNC has declared the September 11, 2007 note also in default under the cross-default provisions of the loan documents, it has not explained why any portion of the principal due under the September 11, 2007 note would not be subject to the 6.00% annual interest rate set forth in the April 29, 2008 change-in-terms agreement.   *See* Doc. No. 1-2, at 25.

[7] PNC has also provided no explanation as to why Welsh attested in his original affidavit that $19,492.08 was due in interest as of April 3, 2015, *see* Doc. No. 16-1 ¶ 10, but now provides a markedly different figure.

[8] PNC defined the Obligation as the August 21, 2006 note, bearing PNC loan # 605493044.   Doc. No. 1 ¶ 8.

[9] As with the claimed interest figure, Welsh's supplemental affidavit also fails to explain why he now identifies a different late-fee figure than he did in his original affidavit.   *See* Doc. No. 16-1 ¶ 10.

[10] Extrapolating the claimed late fee, this "unpaid amount" would be $50,882.00.

Consequently, although PNC has been afforded an opportunity to supplement its evidence, the total damages to which PNC is entitled still cannot be determined with certainty on the present submissions. Accordingly, I recommend that the Court only address liability at this point and, if liability is found, require PNC to file a renewed motion for damages, costs and attorneys' fees supported by evidence in the detail required by the Court's orders within a time to be established by the Court.[11]

The renewed motion for damages motion should be supported by an affidavit or declaration under penalty of perjury that provides *detailed calculations and explanations* of all damages, including the total interest claimed and total late fees claimed. A bare statement that the totals are reflected in loan histories or other attached documents should not suffice. Nor should it be sufficient for an affiant to state that he calculated the amounts, without fully detailing those calculations for the Court. With respect to the interest total, and in light of PNC's contention that interest should be calculated under a single per diem figure, PNC should identify the precise date upon which the interest calculation should begin and why. If loan histories indicate that Associated Credit or Dreher made any interest payments after such date, PNC should also address whether such payments should be deducted from the interest total. With respect to the late-fee total, PNC should identify the individual amounts against which the 5% late penalty should be assessed and why assessment of the penalty is appropriate with respect to each such amount. A renewed motion should also be supported by a proposed order directing a foreclosure sale.[12]

---

[11] If necessary, an evidentiary hearing can be held on a renewed motion for damages.

[12] It is unlikely that I will recommend an award of additional attorneys' fees incurred in filing the renewed motion because the renewed motion is necessary only to allow PNC to correct its mistakes made in previous filings. *See Brother v. Miami Hotel Inv., Ltd.*, 341 F. Supp. 2d 1230, 1238 (S.D. Fla. 2004).

V.   **RECOMMENDATION.**

In light of the foregoing, I respectfully **RECOMMEND** that the Court do the following:

(1)   **GRANT in part** PNC's motion for default judgment (Doc. No. 16);

(2)   **FIND** that Associated Credit is liable for breach of the Note (Count I);

(3)   **FIND** that Dreher is liable for breach of the Guaranty (Count II);

(4)   **FIND** that foreclosure of PNC's lien on the property at 975 Eyster Boulevard, Rockledge, Florida 32955, is appropriate;

(5)   **ORDER** that PNC file, within a time set by the Court, a motion for a determination of the damages, attorneys' fees and costs that the Court should award in the default judgment and a proposed order directing a foreclosure sale.

Failure to file written objections to the proposed findings and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its filing shall bar an aggrieved party from challenging on appeal the district court's order based on unobjected-to factual findings and legal conclusions.

Recommended in Orlando, Florida on August 18, 2015.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy